**Charlotte WILBER, Individually and as Executor of the Estate of Donald A. Wilber, Deceased, Appellant,**

v.

**OWENS–CORNING FIBERGLASS CORPORATION, et al., Appellees.**

No. 90–882.

Supreme Court of Iowa.

Oct. 16, 1991.

Frank Watson and John Gajdel of Watson & Gajdel, Des Moines, and Charles S. Siegel, Christina L. Lewis and Janice Robinson of Baron & Budd, P.C., Dallas, Tex., for appellant.

John D. Ackerman and Ruth P. Clark of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellee Owens–Corning Fiberglass Corp.

Gregory G. Barntsen of Smith, Peterson, Beckman & Willson, Council Bluffs, E. Ralph Walker and Cecelia C. Ibson of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, and R. Todd Gaffney of Duncan, Jones, Riley & Finley, P.C., Des Moines, for other appellees.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

■ An insulation worker's suit against an asbestos manufacturer for personal injuries was dismissed because of a two-year statute of limitations. The question involves the discovery rule. The worker knew for more than two years that he suffered from asbestosis, but did not know he would develop mesothelioma. The trial court determined the discovery rule did not excuse the late filing. We think it did and hence reverse and remand.

Donald Wilber, the insulation worker, brought this suit August 24, 1988. He died a month later and his widow Charlotte was substituted as plaintiff. From April 1941 to June 1976 Wilber was exposed to various asbestos products said to have been manufactured by the defendants. On January 31, 1984, Wilber was diagnosed as having asbestosis, a condition which was never the subject of claim or suit. It was not until August 1988, a month prior to bringing this suit, that Wilber learned he had developed mesothelioma.

We learn from the record made on defendant's motion for summary judgment that mesothelioma is a rare tumor arising from the mesothelial cells lining the pleural, pericardial and peritoneal cavities. The latency period of mesothelioma ranges from twenty to forty years. Unilateral chest pain and shortness of breath are the most common presenting symptoms of the tumor. Pleural mesothelioma, the type of mesothelioma that Wilber had, is a progressive malignant tumor. Most patients who are diagnosed with pleural mesothelioma die within a year of that diagnosis.

Asbestosis is a pneumoconiosis produced by inhaling asbestos fibers. It is characterized by bilateral diffuse interstitial fibrosis of the lung parenchyma. The most common symptom of asbestosis is dyspnea, which is shortness of breath.

Asbestosis and mesothelioma are separate and distinct diseases. Either disease can exist in the absence of the other. The diseases do share one common characteristic: both may be caused by exposure to asbestos.

The trial court sustained defendant's motion for summary judgment on the basis of Iowa Code section 614.1(2) (1989) (two-year statute of limitations for personal injury suits). The court determined that the claim was time barred because it was filed more than two years after the diagnosis of asbestosis. The district court reasoned that the statute of limitations began to run when Wilber became aware of an asbestos-related injury on January 31, 1984.

The trial court placed considerable reliance on our holding in *LeBeau v. Dimig*, 446 N.W.2d 800 (Iowa 1989). LeBeau was injured in an automobile accident. Although her injuries at first seemed minor, she was later diagnosed with epilepsy. Her suit, ascribing the epilepsy to the accident, was brought within two years of the diagnosis but more than two years after the accident. We were faced with the question whether to apply the two-year statute of limitations from (1) the accident (the first injury) or (2) discovery of epilepsy (the second injury). *LeBeau*, 446 N.W.2d at 801–02.

To answer the question we distinguished "pure latent" injury cases from "traumatic event/latent manifestation" injury cases. *LeBeau*, 446 N.W.2d at 802. Pure latent injury cases can be brought by plaintiffs who fail to discover either their injury or its cause until long after the negligence occurs. These cases, we said, arise in one of three situations: (1) actions by workers afflicted with occupational disease; (2) medical malpractice actions by patients who discover their injuries long after the treatment ends; (3) product liability actions brought by consumers of medically related products, such as drugs, who discover a side effect caused by the products. *Id.* The discovery rule is applied in these cases to prevent the unfairness which would result from assuming a plaintiff was aware of facts which were "unknown and inherently unknowable." *Id.* (quoting *Urie v. Thompson*, 337 U.S. 163, 169, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282, 1292 (1949)).

Wilber qualifies under the first situation as a worker afflicted with an occupational disease, and therefore can claim to have suffered a pure latent injury. But this in itself does not mean he can escape the statute of limitations because Wilber's injury also has characteristics in common with traumatic events/latent manifestation cases.

Traumatic event/latent manifestation cases are brought by plaintiffs who sustain both immediate and latent injuries from a noticeable, traumatic occurrence. *Id.* (quoting *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 230 (5th Cir.1984)). The plaintiff realizes that an injury has oc-

curred and its cause, but the full extent of the harm has not become manifest.

Because we classified LeBeau's suit as a traumatic event/latent manifestation case, we refused to apply the discovery rule. *Id.* at 803.

Other courts have considered whether a latent manifestation of one disease, following an earlier diagnosis of another disease which stemmed from the same cause, is barred by the statute of limitations. A clear majority have allowed the subsequent action. *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 120–21 (D.C.Cir.1982) (earlier diagnosis of mild asbestosis did not cause claim for mesothelioma attributable to same asbestos exposure to be time barred). *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1134 (Del.Super.Ct.1985) (earlier diagnosis of pleural thickening did not time bar claim for asbestosis); *VaSalle v. Celotex Corp.*, 161 Ill.App.3d 808, 811, 113 Ill. Dec. 699, 702, 515 N.E.2d 684, 687 (1987) (plaintiff's cause of action for lung cancer not time barred by earlier diagnosis of asbestosis); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 234, 492 A.2d 1286, 1296 (1985) (answering a certified question court stated that if claimant's colon cancer was a latent disease separate and distinct from asbestosis, claim was neither barred by the statute of limitations nor even by a prior action for asbestosis); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 667–69, 464 A.2d 1020, 1028 (1983) (claim for lung cancer was not time barred despite a prior diagnosis of asbestosis); *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 319, 399 N.W.2d 1, 9 (1986) (one plaintiff's action for cancer and another's for mesothelioma were not time barred by prior diagnoses of asbestosis); *Fusaro v. Porter–Hayden Co.*, 145 Misc.2d 911, 918, 548 N.Y.S.2d 856, 859–60 (N.Y.Sup.Ct.1989) (claim for mesothelioma not time barred by earlier asbestosis diagnosis); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 684 (Tenn.1990) (answering a certified question court stated that a mesothelioma claim was not time barred by an earlier diagnosis of asbestosis). *Contra Joyce v. A.C. & S., Inc.*, 785 F.2d 1200, 1203–05 (4th Cir.1986) (asbestosis claim was time barred because action accrued upon earlier diagnosis of pleural thickening); *Ross v. Johns–Manville Corp.*, 766 F.2d 823, 828 (3d Cir.1985) (applying Pennsylvania law claim for colon cancer was time barred since claim accrued when plaintiff was diagnosed with asbestosis); *Cathcart v. Keene Indus. Insulation*, 324 Pa.Super. 123, 136–37, 471 A.2d 493, 506–07 (1984) (claim for asbestosis was time barred because claim accrued upon earlier diagnosis of pleural thickening); *Staino v. Johns–Manville Corp.*, 304 Pa.Super. 280, 296, 450 A.2d 681, 688–89 (1982) (claim for pleural thickening would be time barred because action would have accrued on diagnosis of asbestosis); *Pecorino v. Raymark Indus., Inc.*, 763 S.W.2d 561, 569 (Tex.App.1988) (claim for mesothelioma was time barred since cause of action accrued upon earlier diagnosis of asbestosis).

In urging us to adopt the majority view and allow the subsequent action, Charlotte is faced with our *LeBeau* holding. In *LeBeau* we mentioned the policy against splitting a cause of action. LeBeau had previously claimed and been paid for $200 in medical expenses which were paid without suit being filed, or even a release being given. In the present case, on the other hand, Donald made no previous claim but we think LeBeau's receipt of minimal medical expenses under the circumstances is not significantly different from Donald's election not to make a claim when he thought he had suffered only from asbestosis.

Authorities from other courts teach us that we can never know when, or how, some latent injury may manifest itself from exposure to asbestos. One study indicates that approximately fifteen percent of asbestosis sufferers will develop mesothelioma. *See Pierce*, 296 Md. at 659 n. 2, 464 A.2d at 1023 n. 2 (1983) (citing Selikoff, Churg & Hammond, *Relation Between Exposure Between Asbestosis and Mesothelioma*, 272 New Eng.J.Med. 560, 662 (1965)). Although we have no record on the matter, we think it is apparent that LeBeau had even less reason to fear later developing epilepsy. To some extent Wilber's higher

likelihood of developing mesothelioma distinguishes this case from *LeBeau* especially when the focus is on the "reasonable expectations of a defendant as to when exposure to the liability will be terminated." *LeBeau,* 446 N.W.2d at 803.

Although it does not distinguish this case from *LeBeau* it must be remembered that Wilber could not have recovered for increased risk of developing cancer had he sued immediately upon learning of his asbestosis. It is well known that a showing of reasonable medical certainty is a predicate for recovery for future physical consequences. *E.g., Mercer v. Ridnour,* 218 N.W.2d 625, 627 (Iowa 1974) (future pain and suffering); *Mabrier v. A.M. Serv. Corp. of Ratown,* 161 N.W.2d 180, 183 (Iowa 1968) (future pain and suffering); *Bostian v. Jewell,* 254 Iowa 1289, 1298–99, 121 N.W.2d 141, 146 (1963) (future consequences of an existing injury); *see also* Restatement (Second) of Torts § 912 comment e, at 485 (1979); annotation, *Admissibility of Expert Medical Testimony as to Future Consequences of Injury as Affected by Expression in Terms of Probability or Possibility,* 75 A.L.R.3d 9 (1977); 22 Am.Jur.2d *Damages* § 484, at 564 (1988); 25 C.J.S. *Damages* § 29, at 693 (1966).[1]

We nevertheless think the discovery rule should be available in the present case. Statutes of limitations are designed to prevent fraudulent and stale actions, while still preserving a reasonable period of time in which to bring a claim. *State v. Ganz,* 376 N.W.2d 887, 891 (Iowa 1985). They are statutes of repose affecting only the remedy sought, leaving the underlying cause of action intact. *Schulte v. Wageman,* 465 N.W.2d 285, 287 (Iowa 1991). Statutes of limitations are based more on necessity and convenience than on logic. *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635 (1945). Legislation limiting the time for bringing an action has been primarily motivated by two considerations. *Wilson v. Johns–Manville Sales Corp.,* 684 F.2d at 111. The first consideration is evidentiary in nature and involves the concern that, over time, the search for truth may be impaired by the loss of evidence. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259, 266 (1979). The second consideration is the repose of stale claims against potential defendants who need to make plans for the future, which would be extremely difficult with the uncertainty inherent in potential liability. *Wilson,* 684 F.2d at 119.

The *Wilson* court, faced with the precise issue we face, pointed out that these two considerations must sometimes yield to a more fundamental one. We quote and adopt the following:

> [I]n situations involving the risk of manifestation of a latent disease, unlike the mine run of litigation, the evidentiary consideration counsels narrower delineation of the dimensions of a claim. Key issues to be litigated in a latent disease case are the existence of the disease, its proximate cause, and the resultant damage. Evidence relating to these issues tends to develop, rather than disappear, as time passes.
>
> Looking beyond repose and evidentiary considerations, we take into account the interests generally involved in personal

---

**1.** Some courts have refused to allow claims for the increased risk of cancer due to asbestos exposure but have recognized that if the plaintiffs were to develop cancer, an action could then be brought. *Herber v. Johns–Manville Corp.,* 785 F.2d 79, 82 (3d Cir.1986); *Jackson v. Johns–Manville Sales Corp.,* 727 F.2d 506, 521 (5th Cir.1984), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Eagle–Picher Indus. v. Cox,* 481 So.2d 517, 520–21 (Fla.Dist.Ct. App.1985); *Mauro v. Raymark Indus., Inc.,* 116 N.J. 126, 143, 561 A.2d 257, 266 (1989); *Devlin v. Johns–Manville Corp.,* 202 N.J.Super. 556, 568, 495 A.2d 495, 502 (1985); *see also In re Moorenovich,* 634 F.Supp. 634, 637 (D.Me.1986) (action for increased fear of developing cancer would not necessarily bar action for cancer should it develop); *Campo v. Asbestospray Corp.,* 158 A.D.2d 259, 550 N.Y.S.2d 663 (1990) (dismissing declaratory judgment action brought by plaintiffs suffering from minor injuries from asbestos exposure who sought to preserve an action for serious injuries, should they develop); *LaVelle v. Owens–Corning Fiberglass Corp.,* 30 Ohio Misc.2d 11, 14, 507 N.E.2d 476, 480 (Ohio Ct.Com.Pl.1987) (in ordering no reference be made to the increased risk of cancer from asbestos exposure, court recognized the "perplexing problem" that would occur if plaintiff were to develop cancer).

injury and death cases: plaintiff's in obtaining adequate compensation, defendant's in paying no more than that. Integrating these two, the community seeks to advance, through the system of adjudication, relief that will sufficiently, but not excessively, compensate persons for injuries occasioned by the tortious acts of others. In latent disease cases, this community interest would be significantly undermined by a judge-made rule that upon manifestation of any harm, the injured party must then, if ever, sue for all harms the same exposure may (or may not) occasion sometime in the future.

*Wilson v. Johns–Manville Sales Corp.*, 684 F.2d at 119. *See also* M. Greene, *The Paradox of Statutes of Limitations in Toxic Substances Litigation*, 76 Calif.L.Rev. at 973–74.

Our *LeBeau* opinion, though cited with approval, was distinguished on the same basis in *Potts v. Celotex Corp.*, 796 S.W.2d 678, 684 (Tenn.1990).

■ We conclude that our *LeBeau* holding should not cause us to reject the clear and proper majority view. The manifestation of asbestosis does not trigger the running of the statute of limitations on all separate, distinct, and later-manifested diseases which may have stemmed from the same asbestos exposure.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.